HILL, Respondent, v. BRADSHAW, Appellant.

(231 N. W. 540.)

(File No. 6942.   Opinion filed June 27, 1930.)

*Parliman & Parliman,* of Sioux Falls, for Appellant.

*E. E. Sullivan,* of Sioux Falls, for Respondent.

BROWN, P. J.　About six o'clock in the evening of November 19, 1925, plaintiff was operating a highway patrol drag on highway No. 15 a short distance from Worthing in Lincoln county when his drag or grader was run into from behind by defendant's car, resulting in plaintiff being thrown from his seat and sustaining a broken leg and other injuries. In an action to recover for the injuries, verdict and judgment were for plaintiff, and, from the judgment and an order denying a new trial, defendant appeals, and assigns as error the trial court's refusal to instruct

the jury that if plaintiff was asleep at the time of the accident or did not have hold of the lines with which he was driving the horses at the time of the accident he would be guilty of contributory negligence and could not recover, and also assigns insufficiency of the evidence to justify the verdict.

There is no direct evidence that plaintiff was asleep or that he did not have hold of the lines. The only direct evidence on that subject is the testimony of plaintiff himself who stated positively that he was not asleep, and that he did have hold of the lines and was driving straight north slightly to the left of the center of the highway at the time he was struck. Defendant bases his contention, that plaintiff, in fact, was asleep at the time he was struck, upon the testimony of defendant himself and that of C. S. Caldwell who operated a filling station and garage at Worthing at the time, and who both testified that after the accident they drove out from Worthing to where the collision took place and observed the tracks made by the drag for some distance back, and that the tracks swerved back and forth across the road. Assuming this testimony to be true, it does not necessarily indicate that plaintiff was asleep. He may have been very wide awake but absorbed in contemplation "of the spacious firmament on high," or in many another train of thought. After the collision the team ran away and turned into a farmyard by the roadside some distance ahead, where they stopped. Defendant and the witness Caldwell both testified that they went to this farmyard and found the team standing loose in the yard with the reins tied around a lever in front of the seat. Defendant testified that he presumed this was a lever used for regulating the blade of the drag. Plaintiff, however, testified positively that there was no lever of any kind upon the drag; that the height of the blade was regulated by a wheel, and that he had the reins in his hands driving the horses when the drag was struck by defendant's car. The trial court may well have thought the theory, that plaintiff feeling drowsy would purposely tie the lines to a lever in the machinery of his drag and betake himself to sleep while allowing the horses to guide themselves along the highway with the drag in operation, too far-fetched on which to base an instruction. In the instructions given by the court the jury were told that if they should find that plaintiff "was guilty of contributory negligence, that is, that he did not use the care and caution which an ordinarily

prudent man might be expected to use under the circumstances," verdict should be for the defendant. We think this instruction was comprehensive enough to include and cover the situation assumed in defendant's requested instruction, for no jury would fail to realize and know that a driver of a patrol drag on a state highway was not using the care and caution which an ordinarily prudent man might be expected to use, if he tied the reins of his team around a lever on the machinery and went to sleep on the job, allowing the horses to continue pulling the drag along the highway without guidance or control.

Defendant argues that plaintiff was guilty of contributory negligence in being on the highway with his grader after dark without lights. The statute at that time did not require a horse-drawn vehicle to have lights, and besides, the want of lights on the grader did not in any way contribute to the collision, for defendant himself testified he saw the drag when it came within the focus of his lights, that he slowed down and sounded his horn and went along some distance behind plaintiff and was probably one hundred feet or more behind the patrol when he sounded the horn as a signal to pass; that as he turned on the gas to pass on the right-hand side (he did not think there was room enough to pass on the left) the team swerved to the right; that he immediately threw on his brakes and turned to the left and collided with the drag. It is clear from defendant's own testimony that plaintiff's failure to have lights on the drag in no way contributed to the collision.

On the other hand, plaintiff testified that he was driving straight ahead pretty close to the center of the road a little to the left, and that he believed there was room enough on both sides to go by with a car; that the blade on his drag was ten feet in width, and one width had been dragged on each side of the road, and at the time of the collision he was on the second width bringing the gravel to the center; that at the time of the collision he had the lines in his hands; that the horses did not turn or swerve to the right but were traveling straight ahead and had been traveling straight ahead. On the evidence there was clearly a jury question both as to defendant's negligence and plaintiff's contributory negligence, and we cannot hold the evidence insufficient to justify the verdict. Appellant contends that the only negligence alleged in the

complaint was a failure to have lights on his car and driving at an excessive rate of speed; that defendant and his wife both testified positively that defendant's lights were burning, and that while plaintiff testified that defendant's lights were not turned on there is no evidence that it was one-half an hour after sunset, between which time and one-half hour before sunrise motor vehicles are required by law to have lights displayed. Defendant testified that the collision occurred around six o'clock or a little after, his wife testified that it was after six o'clock in the evening, and plaintiff testified that it was around six o'clock in the evening. We can take judicial notice that sunset in the latitude of Worthing, S. D., on the 19th of November, is in the neighborhood of 5:10 o'clock, and therefore the collision occurred more than one-half an hour after sunset. Appellant and his wife also testify that they were traveling some twelve to fifteen miles an hour, not exceednig fifteen miles an hour, when their car collided with the grader, and appellant argues that this was not an excessive speed. The statute at the time provided that every person operating a motor vehicle on any public highway of this state shall drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person. Whether or not fifteen miles an hour in the situation in which the parties were placed at the time was an excessive speed was a question for the jury.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.